# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### CASE NO. 9:14-cv-81395-MARRA

FEDERAL TRADE COMMISSION, and

STATE OF FLORIDA,

      Plaintiffs,

    v.

Inbound Call Experts, LLC also d/b/a Advanced Tech
Support, a limited liability company,

Advanced Tech Supportco, LLC, a limited liability company,

PC Vitalware, LLC, a limited liability company,

Super PC Support, LLC, a limited liability company,

Robert D. Deignan, individually and as an officer of Inbound
Call Experts, LLC, Advanced Tech Supportco, LLC, PC
Vitalware, LLC, and Super PC Support, LLC,

Paul M. Herdsman, individually and as an officer of Inbound
Call Experts, LLC, PC Vitalware, LLC, and Super PC
Support, LLC,

Justin M. Wright, individually and as an officer of Inbound
Call Experts, LLC, PC Vitalware, LLC, and Super PC
Support, LLC,

PC Cleaner, Inc., a corporation,

Netcom3 Global, Inc., a corporation,

Netcom3, Inc. also d/b/a Netcom3 Software Inc. and

Cashier Myricks, Jr. a/k/a Cashier Myrick, individually and
as an officer of PC Cleaner, Inc., Netcom3 Global, Inc., and
Netcom3, Inc.,

      Defendants.

**FIRST AMENDED COMPLAINT**
<u>**FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**</u>

Plaintiffs, the Federal Trade Commission ("FTC") and the State of Florida, Office of the Attorney General ("State of Florida") for their Complaint allege:

1.      The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, as amended, to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for the Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and in violation of the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, as amended.

2.      The State of Florida, by and through its Attorney General, Pamela Jo Bondi, brings this action under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq*., to obtain temporary, preliminary and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief, for Defendants' acts or practices in violation of the FDUTPA.  The State of Florida has conducted an investigation, and the head of the enforcing authority, Attorney General Pamela Jo Bondi, has determined that an enforcement action serves the public interest.

<u>**JURISDICTION AND VENUE**</u>

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), 57b, 6102(c), and 6105(b).

4.      This Court has supplemental jurisdiction over the state of Florida's claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1-3), (c)(1-2), and (d), and 15 U.S.C. § 53(b).

## PLAINTIFFS

6.      The FTC is an independent agency of the United States Government created by statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces the Telemarketing Act, 15 U.S.C. §§ 6101-6108, as amended.   Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices.

7.      The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the TSR, and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.   15 U.S.C. §§ 53(b), 56(a)(2)(A)-(B), 57b, 6102(c), and 6105(b).

8.      The State of Florida is the enforcing authority under the FDUTPA pursuant to Florida Statutes Section 501.203(2) and is authorized to pursue this action to enjoin violations of the FDUTPA and to obtain legal, equitable or other appropriate relief including rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, or other relief as may be appropriate.  Fla. Stat. §§ 501.207, 501.2075 and 501.2077.

## DEFENDANTS

9.      Defendant Inbound Call Experts, LLC d/b/a Advanced Tech Support ("ICE"), is a Florida limited liability company with its principal place of business at 4800 TRex Avenue, Suite 350, Boca Raton, Florida.  ICE transacts or has transacted business in this district and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, ICE has advertised, marketed, distributed, or sold computer security or technical support services to consumers throughout the United States.

10.     Defendant Advanced Tech Supportco, LLC ("ATS") is a Florida limited liability company with its principal place of business at 700 Banyan Trail, Suite 200, Boca Raton, Florida.  ATS transacts or has transacted business in this district and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, ATS has advertised, marketed, distributed, or sold computer security or technical support services to consumers throughout the United States.

11.     Defendant PC Vitalware, LLC ("PC Vitalware"), is a Florida limited liability company with its principal place of business at 700 Banyan Trail, Suite 200, Boca Raton, Florida.  PC Vitalware transacts or has transacted business in this district and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, PC Vitalware has advertised, marketed, distributed, or sold computer security or technical support services to consumers throughout the United States.

12.     Defendant Super PC Support, LLC ("Super PC Support"), is a Florida limited liability company with its principal place of business at 4800 TRex Avenue, Suite 350, Boca Raton, Florida.  Super PC Support transacts or has transacted business in this district and throughout the United States.  At all times material to this Complaint, acting alone or in concert

with others, Super PC Support has advertised, marketed, distributed, or sold computer security or technical support services to consumers throughout the United States.

13.     Defendant Robert D. Deignan ("Deignan") is the CEO of ICE and Super PC Support, and the Manager of ATS and PC Vitalware.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of ICE, ATS, PC Vitalware, and Super PC Support set forth in this Complaint.  Defendant Deignan resides in Lighthouse Point, Florida and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

14.     Defendant Paul M. Herdsman ("Herdsman") is the Chief Operating Officer of ICE and Super PC Support and a manager of PC Vitalware.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of ICE, ATS, Super PC Support and PC Vitalware set forth in this Complaint.  Defendant Herdsman resides in Deerfield Beach, Florida and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

15.     Defendant Justin M. Wright ("Wright") is the President of ICE and Super PC Support and is a manager of PC Vitalware.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of ICE, ATS, PC Vitalware and Super PC Support set forth in this Complaint.  Defendant Wright resides in Boynton Beach, Florida and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

16.     Defendant PC Cleaner, Inc. ("PC Cleaner") is a California corporation with its principal place of business at 220 N. Center Drive, Suite 197, Newport Beach, California.  PC Cleaner transacts or has transacted business in this district and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, PC Cleaner has advertised, marketed, distributed, or sold computer security services to consumers throughout the United States.

17.     Defendant Netcom3 Global, Inc. ("Netcom3 Global") is a California corporation with its principal place of business at 30025 Alicia Parkway, Suite 106, Laguna Niguel, California.  Netcom3 Global transacts or has transacted business in this district and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, Netcom3 Global has advertised, marketed, distributed, or sold computer security services to consumers throughout the United States.

18.     Defendant Netcom3, Inc., also doing business as Netcom3 Software, Inc., ("Netcom3") is a California corporation with its principal place of business at 30025 Alicia Parkway, Laguna Niguel, California.  Netcom3 transacts or has transacted business in this district and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, Netcom3 has advertised, marketed, distributed, or sold computer security services to consumers throughout the United States.

19.     Defendant Cashier Myricks, Jr. a/k/a Cashier Myrick ("Myricks") is the principal of PC Cleaner, Netcom3 Global and Netcom3.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of PC Cleaner, Netcom3 Global and Netcom3 set forth in this Complaint.  Defendant Myricks resides in Newport Coast, California and, in

connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

20.     Defendants ICE and ATS are hereinafter collectively referred to as "ICE/ATS."

21.     Defendants ICE, ATS, PC Vitalware and Super PC Support are hereinafter collectively referred to as the "ICE Corporate Defendants."

22.     Defendants ICE, ATS, PC Vitalware, Super PC Support, Deignan, Herdsman, and Wright are hereinafter collectively referred to as the "ICE Defendants."

23.     Defendants PC Cleaner, Netcom3 Global, and Netcom3, are hereinafter collectively referred to as the "PC Cleaner Corporate Defendants."

24.     Defendants PC Cleaner, Netcom3 Global, Netcom3 and Myricks are hereinafter collectively referred to as the "PC Cleaner Defendants."

## <u>COMMON ENTERPRISES</u>

25.     The ICE Corporate Defendants have operated as a common enterprise while engaging in the illegal acts and practices alleged below.  The ICE Corporate Defendants have conducted the business practices described below through interrelated companies that have common ownership, officers, managers, business functions, employees, and office locations.  For example, Deignan, Herdsman and Wright are all officers and managers of ICE, PC Vitalware, and Super PC Support.  The remaining ICE Corporate Defendant, ATS, operates solely as a d/b/a of ICE, and is managed by Deignan.  In addition, all of the ICE Corporate Defendants share the same two addresses (700 Banyan Trail and 4800 T Rex Avenue in Boca Raton) and use them interchangeably on corporate records, license applications, bank records, and in business correspondence.

26.     The ICE Corporate Defendants are interrelated.  For example, in correspondence between Deignan and the Better Business Bureau ("BBB") regarding the BBB's decision to revoke ICE/ATS's BBB accreditation, Deignan references his companies as "Inbound Call Experts d/b/a Advanced Tech Support."   ICE also filed a complaint in Florida Circuit Court identifying itself as "Inbound Call Experts d/b/a Advanced Tech Support."  ICE is the registrant for the ICE Corporate Defendants' domain, advancedtechsupport.com.  ICE hires employees, but employees are instructed to tell consumers that they are from ATS.  Further, PC Vitalware and Super PC Support are also interrelated with ICE/ATS.  Corporate bank accounts for both entities are in Deignan's name.  PC Vitalware produces PCMRI software, one of the products that the ICE Corporate Defendants upsell to consumers.  Super PC Support advertises remote technical assistance on its websites and directs consumers to the ICE/ATS call center.

27.     Because the ICE Corporate Defendants have operated as a common enterprise, each individual entity is jointly and severally liable for the acts and practices alleged below.  Defendants Deignan, Herdsman and Wright have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the ICE Corporate Defendants that constitute the common enterprise.

28.     Similarly, the PC Cleaner Corporate Defendants have operated as a common enterprise while engaging in the illegal acts and practices alleged below.  The PC Cleaner Corporate Defendants have conducted the business practices described below through interrelated companies that have common ownership, officers, managers, business functions, employees, and office locations.  For example, Cashier Myricks is the President of Netcom3 Global and PC Cleaner.  He registered the domain pc-cleaners.com, a website that refers to the corporate entities together as "PC Cleaner Inc./Netcom3 Global, Inc."  Myricks also registered

the domain netcom3global.com.  This website is identical to the website netcom3.com and the domain information for netcom3.com lists netcom3global.com as the website title.  PC Cleaner Pro, a product offered by PC Cleaner, is available for download on the netcom3.com website.

29.     Because the PC Cleaner Corporate Defendants have operated as a common enterprise, each individual entity is jointly and severally liable for the acts and practices alleged below.  Defendant Myricks has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the PC Cleaner Corporate Defendants that constitute the common enterprise.

## COMMERCE

30.     At all times material to this Complaint, the Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44 and Florida Statutes § 501.203(8).

## DEFENDANTS' BUSINESS ACTIVITIES

### Overview

31.     Defendants operate a massive Internet-based scheme in which they lure consumers, many of whom are senior citizens, to call an inbound call center and then dupe consumers into purchasing computer technical support services and unnecessary computer security software.  Consumers spend from $150 to $500 to fix non-existent problems with their computers.

32.     By exploiting consumers' concerns about Internet threats like spyware and viruses, Defendants scare consumers into believing that their computers are in imminent danger in order to sell consumers software protection products and unnecessary computer security or technical support services.

**The ICE Defendants Lure Consumers to Call Their Inbound Call Center**

33.     Since at least 2012, the ICE Defendants have employed a variety of methods to lure consumers to call their inbound call center known as ATS, such as: (1) posting Internet-based advertisements; (2) advertising in connection with web search results; (3) partnering with developers of computer security products; and (4) purportedly assisting with technical support for computer security software companies.

34.     In some instances, consumers see Internet advertisements for computer repair or computer updates.  If they click on these advertisements, they are directed to call a phone number that leads to the ICE Defendants.

35.     The ICE Defendants also lure consumers through web searches.  For example, the ICE Defendants pay for Google Adwords accounts.  Google Adwords is a paid service used to link consumers to particular websites based on key search terms.  In some instances, consumers have called the ICE Defendants using numbers they found through Google searches related to computer technical issues.  The ICE Defendants also registered and paid for approximately 150 domains, most of which appear to relate to common problems and anti-virus software, including freetechsupport.com,      advancedtechsupport.com,      malwareexperts.com,      pcmri.com, pcmriforlife.com, superpcsupport.com, and pcvitalware.com.

36.     The ICE Defendants partner with computer security software companies to purportedly provide technical support for particular software.  In those instances, unbeknownst to the consumer, the ICE Defendants pay for the phone number that appears on the software partner's website.  When consumers call the software company for assistance with a particular product, rather than reaching that software developer, they reach ICE/ATS, at which point they are subjected to the ICE Defendants' sales pitch.  In some instances, the ICE Defendants'

telemarketers do not even try to assist consumers with their particular software problem, but instead simply convince consumers they need unrelated and unnecessary technical support and additional security software products.

37.     In other instances, the ICE Defendants partner with software companies pitching various computer security products, such as SpeedyPC, PC Utility Kit, Geek Tech Toolbox, PC Cleaner Plus, Spam Fighter, and PC Cleaner Pro (discussed in detail below).  After consumers purchase one of these software products, they are directed to call a phone number in order to activate their new software.  In most instances, the ICE Defendants pay for the phone number displayed, and consumers who call the phone number reach ICE/ATS.

### The PC Cleaner Defendants' Deceptive Practices

38.     PC Cleaner Pro is a registry software product created and distributed by the PC Cleaner Defendants. A registry software product is software designed to identify and resolve problems with the Windows registry, a database that stores configuration settings and options on Microsoft Windows operating systems.   In numerous instances, the PC Cleaner Defendants market PC Cleaner Pro on the PC Cleaner Defendants' websites and through pop up advertisements.  In some instances, consumers find PC Cleaner Pro through search engines, such as Google.

39.     In many instances, the PC Cleaner Defendants initially hook consumers by offering free trials of their software or free scans of consumers' computers to identify potential problems.   Once consumers download the free program, PC Cleaner Pro appears to run a "system scan" that invariably detects a host of malicious or otherwise dangerous files and programs, including malware and system errors.  In many instances, PC Cleaner Pro's initial scan identifies thousands of purported problems on a single computer.   Indeed, the scan is

designed to falsely identify problems on consumers' computers, exaggerate minor issues and otherwise deceive consumers into thinking that their computers are significantly compromised.

40.     For example, PC Cleaner Pro scans consumers' computers to identify whether they block 926 specific pieces of malware.  PC Cleaner Pro will then separately count as a "problem" each specimen that is not blocked.  These particular 926 pieces of malware, however, date back to at least 2004 and have not been active threats in many years.  Because these malware specimens have been inactive for so long, Microsoft does not even include them as specific blocks in default Windows installations that come pre-installed with Windows Defender, a comprehensive anti-malware program.  The result is that almost every computer currently in operation will fail to block these 926 malware specimens, and accordingly, PC Cleaner Pro's scan will always find at least 926 "problems" on nearly any computer, even though these specimens are no longer active and blocking them provides no defense against modern malware.

41.     In some instances, PC Cleaner Pro also falsely identifies non-existent malware on a completely fresh installation of Windows or a brand new computer.

42.     In addition, the free scan falsely claims that many innocuous files such as temporary files, web browser cookies, and Windows default settings are "problems."  The Windows operating system is constantly creating temporary files as part of its normal behavior and these files do not constitute an actual problem, but are merely artifacts of normal system behavior that are always present in a computer running Windows.  In addition, web browsing cookies are almost always benign.  Web browsers use cookies to provide routine features for consumers, such as storing consumers' preferences.  Finally, it is misleading to call a Windows default setting a "problem."   A screenshot of PC Cleaner's free scan appears below.



43.    The PC Cleaner Defendants' website then extends to consumers the opportunity to rid their computers of these fake or exaggerated problems by offering the paid version of its software program, PC Cleaner Pro.  Many consumers exposed to the PC Cleaner Defendants' false scan results pay $29.99 or more for the software program.  Once consumers pay for the software, the order confirmation page instructs them to call a toll-free telephone number to activate the software.  A screenshot of the confirmation page appears below.



44.     The PC Cleaner Defendants are affiliated with multiple different call centers, but in some instances, the toll-free number displayed on the confirmation page is owned by the ICE Defendants and routes consumers to the ICE/ATS call center.

45.     Between 2011 and 2013, consumers downloaded PC Cleaner Pro (free and/or paid versions) more than 450,000 times.

**The ICE Defendants Scare Consumers into Buying Unnecessary Technical Support and Security Software Products**

46.     After consumers call the ICE Defendants' call center, telemarketers walk the consumer through a scripted sales pitch designed to convince consumers that their computers are in immediate need of repair, regardless of whether the computer has a problem.

47.     In many instances, the telemarketers direct the consumers to a remote access website in order to gain remote access to their computers.  The ICE Defendants use a website

they have registered, such as fix22.com and fixme1.com, or a third-party remote access software company, like LogMeIn.  The telemarketers then instruct consumers to enter a code or download a software application to allow the telemarketers remote access to the consumers' computers. Once remotely connected, the telemarketers can completely control the consumers' computers and can, for example, move the cursor, enter commands, run applications, and access stored information.  The ICE Defendants' telemarketers then typically walk the consumer through a four-part diagnostic process that includes displaying (1) the computer's task manager, (2) the Microsoft System Configuration Utility ("msconfig") services tab, (3) the msconfig start-up menu, and (4) the Event Viewer.

48.     First, the ICE Defendants' telemarketers show consumers the Window's task manager and look at the number of processes running to determine how hard the computer is working.  In many instances, the technician tells consumers that their computers should be running approximately 40 to 80 processes at a time.

49.     Second, the ICE Defendants' telemarketers open the built-in Microsoft System Configuration Utility tool known as "msconfig" and tell consumers that software, even after it is un-installed, will leave behind "running services" and "trace elements."  The telemarketers then tell consumers that these "trace elements" can create error codes that build up over time and eventually cause a "blue screen" or the computer to crash.

50.     The claims discussed in Paragraph 49 are false.  Msconfig is simply a built-in tool that shows Windows services and other software that are set to start automatically, and the vast majority of software uninstallers properly remove all associated processes.  "Trace elements" is not a widely-used term in the information technology industry, and  "running services" have no relation to the ability to install or uninstall software or to "blue screens."  The ICE Defendants

mislead consumers who do not understand these messages' technical significance into believing that their computers are compromised.

51.     Third, in some instances, the ICE Defendants' telemarketers open the start up menu to look at the programs that are set to load when the computer starts. The ICE Defendants tell consumers the more programs that are installed, the slower the computer will be on startup.

52.     The final diagnostic test the ICE Defendants conduct is on the Event Viewer screen. This diagnostic test is the "closer" for the sales pitch. The Event Viewer is a log of the various activities that occur during a computer's operation. Many of the entries in the Event Viewer simply reflect successful completion of a computer operation. Other entries, marked with a red X or a yellow triangle, are error or warning messages that indicate that a particular computer operation was not successful. If, for example, a program failed to run correctly because the user was not connected to the Internet, the Event Viewer may record an error or warning message. Despite their potentially alarming appearance, these messages are innocuous. They are generated during the normal operation of a computer. A screenshot of the Window's Event Viewer appears below:

| Application | Number of events: 5,801 | | | |
|---|---|---|---|---|
| Filtered: Log: Application; Levels: Critical, Error, Warning; Source: . Number of events: 495 | | | | |
| Level | Date and Time | Source | Event ID | Task C... |
| Warning | 11/5/2014 10:56:18 AM | User Profile Service | 1530 | None |
| Warning | 11/4/2014 1:04:01 PM | Group Policy Drive Maps | 4098 | (2) |
| Warning | 11/3/2014 10:43:55 PM | User Profile Service | 1530 | None |
| Warning | 11/3/2014 10:43:22 PM | MsiInstaller | 1001 | None |
| Warning | 11/3/2014 10:43:22 PM | MsiInstaller | 1004 | None |
| Error | 11/3/2014 3:16:14 PM | Application Error | 1000 | (100) |
| Error | 11/3/2014 3:00:26 PM | Application Error | 1000 | (100) |
| Warning | 11/3/2014 11:34:36 AM | MsiInstaller | 1001 | None |
| Warning | 11/3/2014 11:34:36 AM | MsiInstaller | 1004 | None |
| Error | 10/31/2014 11:55:17 PM | SideBySide | 80 | None |
| Warning | 10/31/2014 3:22:06 PM | MsiInstaller | 1001 | None |
| Warning | 10/31/2014 3:22:06 PM | MsiInstaller | 1004 | None |
| Warning | 10/31/2014 2:05:38 PM | User Profile Service | 1530 | None |
| Warning | 10/30/2014 2:37:20 PM | User Profile Service | 1530 | None |
| Warning | 10/30/2014 11:01:46 AM | Group Policy Drive Maps | 4098 | (2) |
| Warning | 10/28/2014 2:49:02 PM | Symantec AntiVirus | 129 | None |
| Warning | 10/28/2014 2:00:53 PM | Symantec AntiVirus | 129 | None |
| Warning | 10/28/2014 1:20:19 PM | Group Policy Drive Maps | 4098 | (2) |
| Error | 10/28/2014 1:23:07 AM | SideBySide | 80 | None |
| Error | 10/24/2014 7:56:49 AM | Symantec AntiVirus | 51 | None |
| Error | 10/22/2014 1:22:16 AM | SideBySide | 80 | None |
| Warning | 10/21/2014 5:47:08 PM | Symantec AntiVirus | 129 | None |
| Warning | 10/21/2014 4:29:36 PM | Group Policy Drive Maps | 4098 | (2) |
| Warning | 10/21/2014 11:28:33 AM | Symantec AntiVirus | 129 | None |
| Warning | 10/21/2014 10:39:35 AM | User Profile Service | 1530 | None |
| Warning | 10/21/2014 10:09:25 AM | User Profile Service | 1530 | None |

53.     After opening up the computer's Event Viewer, the ICE Defendants highlight the errors and warnings listed in the log.  The ICE Defendants' telemarketers tell consumers that these errors and warnings are red flags that indicate significant damage.  In some instances, the telemarketers refer to something called "trace damage," which they claim is caused by current or past computer infections.  Telemarketers tell consumers that if left unrepaired, this "trace damage" can build up and cause the computer to crash.  The ICE Defendants' telemarketers also tell consumers that this type of damage cannot be fixed by software products, but must be fixed manually by a certified technician.

54.     The claims discussed in Paragraph 53 are false.  Window's Event Viewer program commonly displays errors and warnings that are not indicative of computer problems. Computers that are completely free of damage, viruses or other malware will still create warning and error messages in their Event Viewers during normal operation and the number of warnings

and errors is not an indication of the severity of any computer issues. The ICE Defendants mislead consumers who do not understand these messages' technical significance into believing that their computers are compromised.

55.     Having convinced consumers that their computers are in danger, and that they must be fixed manually by a certified technician, the ICE Defendants' telemarketers tell consumers that they have two options: (1) they can have their computer repaired by a well-known retailer that will be very costly and cause them to be without a computer for several days; or (2) they can purchase technical support directly from the ICE Defendants and have their computer repaired the same day while they sit in the comfort of their own home.

56.     If consumers do not agree to pay for the services, the ICE Defendants' telemarketers typically pressure the consumers. For example, the telemarketers will warn consumers about the harm that will befall their computers if they do not allow the ICE Defendants to repair the purported problems immediately.

57.     The ICE Defendants charge consumers approximately $150 to $300 for their technical support services. In some instances, they also charge a recurring fee for ongoing technical support ranging from approximately $14.99 per month to $19.99 per month. The recurring fees continue until consumers cancel the service.

58.     In addition to convincing consumers they need to buy the ICE/ATS technical support services, the ICE Defendants' telemarketers also, in many instances, attempt to upsell software security programs, such as Panda Internet Security, at an inflated price. Even when consumers already have anti-virus programs installed on their computers, the ICE Defendants still tell consumers they need better anti-virus protection. Although the longest license available for Panda Internet Security is for three years and the cost for one computer is approximately

$82.00, the ICE Defendants tell consumers they can buy the same software program for *lifetime protection* at a cost of $500.

59.     After convincing consumers to purchase ICE/ATS's technical services, the ICE Defendants' telemarketers then transfer the consumer's remote access session to a purported technician to perform "repairs."  In some instances, the ICE Defendants' technicians delete the innocuous files found in the Event Viewer that the telemarketers falsely claimed were evidence of "trace damage."  This does not actually improve the security of the computer and, after a few short hours of normal computer use, the logs will again contain new warnings and errors commonly associated with typical computer activity.

60.     In some instances, the ICE Defendants' technicians clear consumers' browsing histories and install cleanup and backup utilities such as Toolbar Cleaner, Glary Utilities (to remove clutter) and Kaspersky TDSSKiller (to remove malware).  The ICE Defendants accept the license agreements of these utility programs on behalf of consumers without their consent or knowledge.  In addition, in some instances, the ICE Defendants' technicians install emergency recovery tools that are incompatible with the computer's operating system, rendering them useless to the computer.

61.     In some instances, the ICE Defendants' technicians cause actual damage – such as deleting files or disabling software – to consumers' computers during the "repair" process. Therefore, in addition to the hundreds of dollars consumers pay for these services, many consumers have had to pay an outside third-party to repair damage done to their computers by the ICE Defendants' technicians or have lost the use of their computers entirely.

**The Role of Robert D. Deignan**

62.     Deignan is the CEO of ICE and Super PC Support, and the manager of ATS and PC Vitalware.  Deignan is one of the named subscribers for the hundreds of phone numbers owned by the ICE Defendants.  In addition, he used his business credit card to pay for telephone numbers and corporate domains, including advancedtechsupport.com, inboundcallexperts.com, pcmri.com, and fix22.com.  The ICE Defendants use these domains to lure consumers to call the ICE /ATS call center and to gain remote access to consumers' computers.  Deignan also has used his business credit card to pay LogMeIn, a third party remote access software company the ICE Defendants use to connect to consumers' computers, and anti-virus vendors whose products the ICE Defendants upsell to consumers.

63.     Deignan is the registrant and paid for nearly 150 tech-related domains, one-third of which were set up using a privacy protection service.  These privacy services can be used by registrants attempting to hide their identities because publicly-available tools for searches related to a particular domain will show only the name of the service, not the name of the registrant. Deignan's   privacy-protected   domains   include:   freetechsupport.com,   pcmriforlife.com, malwareexperts.com and superpcsupport.com.

64.     Since 2012, Deignan has used corporate credit cards to pay for more than $2.2 million in business expenses for the ICE Defendants.

65.     On or about August 21, 2013, the BBB in Florida revoked ICE/ATS's accreditation due to the company's failure to appropriately address and eliminate the pattern of consumer complaints to the BBB.  Deignan is the BBB's point of contact for ICE/ATS, and responded to complaints and correspondence from the BBB.  In his communications with the BBB, Deignan acknowledged that he and the company were aware of the complaints, but pressed

the BBB to reinstate its accreditation on appeal.  Deignan appeared before the BBB at an appeals hearing to argue the issue.  In November 2013, the BBB agreed to reinstate their accreditation, however the BBB continues to receive complaints and has received over 190 complaints within the last three years.

### The Role of Paul M. Herdsman

66.     Herdsman is the Chief Operating Officer of ICE and Super PC Support and a manager of PC Vitalware.  Herdsman was the LogMeIn account holder for accounts the ICE Defendants used to remotely connect to consumers' computers.  This account was opened in October 2011 and used until January 2014.   In addition, Herdsman is one of the named subscribers for the hundreds of phone numbers consumers use to call the ICE Defendants' call center, and he used his business credit card to pay for ICE/ATS telephone numbers.  Herdsman also used his business credit card to pay for numerous business expenses, including the ICE Defendants' LogMeIn accounts, anti-virus vendors whose products the ICE Defendants upsell to consumers, and online advertisements used to solicit new sales employees.

67.     Since 2012, Herdsman has used corporate credit cards to pay for more than $1.7 million in business expenses for the ICE Defendants.

### The Role of Justin M. Wright

68.     Wright is the President of ICE and Super PC Support and is a manager of PC Vitalware.   Wright used his business credit card to pay for numerous business expenses, including payments to anti-virus vendors whose products the ICE Defendants upsell to consumers, Google adwords, and online advertisements used to solicit new sales employees.

69.     Since 2012, Wright has used corporate credit cards to pay for more than $400,000 in business expenses for the ICE Defendants.

70.     Wright also contacted ThreatTrack Security, an anti-virus company whose product, VIPRE, blocks "bad domains."  ThreatTrack Security blocked the ICE Defendants' domain, advancedtechsupport.com, due to a significant number of consumer complaints and the BBB's revocation of the company's accreditation.  Wright exchanged numerous emails with a malware researcher at ThreatTrack to attempt to remove the ICE Defendants' domain from the blocked list.  The researcher informed Wright about complaints against the company and supplied him with links to these complaints.

### The Role of Cashier Myricks, Jr.

71.     Myricks is the President of PC Cleaner, Netcom3 Global and Netcom3.  A private plaintiff filed a class action lawsuit against PC Cleaner, Inc. on May 4, 2012 in United States District Court for the Central District of California.  The suit charged that PC Cleaner, Inc.'s product, PC Cleaner Pro, misrepresented to consumers, through its free trial version, that there were errors and problems on the computer.  It exaggerated the severity and existence of errors and problems and induced consumers to purchase the full version to get rid of these non-existent problems.  Myricks submitted a declaration in this class action lawsuit admitting that he is the Principal of PC Cleaner.

72.     Myricks registered the domains pc-cleaners.com and netcom3global.com.  The pc-cleaners.com website refers to the corporate entities together as "PC Cleaner Inc./Netcom3 Global, Inc."  Myricks lists himself as President of Netcom3 on the website netcom3-pccleaner.com.  Myricks uses three "corporate addresses" for his companies, but in reality, each of the addresses is a postal box.

## **VIOLATIONS OF SECTION 5 OF THE FTC ACT**

73.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

74.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

### **COUNT I – THE ICE DEFENDANTS**
### **Deceptive Representations**
### **(By Plaintiff FTC)**

75.     In numerous instances, in the course of marketing, offering for sale, and selling computer security or technical support services, the ICE Defendants represent or have represented, expressly or by implication, through a variety of means, including through telephone calls and Internet communications, that they have identified problems on consumers' computers, including viruses, spyware, system errors and/or damage, that will affect the performance or security of consumers' computers.

76.     In truth and in fact, in numerous instances in which the ICE Defendants have made the representations set forth in Paragraph 75, many problems that the ICE Defendants represent that they have identified do not affect the performance or security of consumers' computers.

77.     Therefore, the ICE Defendants' representations as set forth in Paragraph 75 are false, misleading, or were not substantiated at the time they were made, and thus, they constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT II – THE PC CLEANER DEFENDANTS**
**Deceptive Representations**
**(By Plaintiff FTC)**

78.     In numerous instances, in the course of marketing, offering for sale, and selling computer security software or services, the PC Cleaner Defendants represent or have represented, expressly or by implication, through a variety of means, including through Internet advertisements and software-generated reports, that they have identified problems on consumers' computers, including malware, system problems and privacy concerns, that will affect the performance or security of consumers' computers.

79.     In truth and in fact, in numerous instances in which the PC Cleaner Defendants have made the representations set forth in Paragraph 78, many problems that the PC Cleaner Defendants represent that they have identified do not affect the performance or security of consumers' computers.

80.     Therefore, the PC Cleaner Defendants' representations as set forth in Paragraph 78 are false, misleading, or were not substantiated at the time they were made, and thus, they constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE TELEMARKETING SALES RULE

81.     Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C.§§ 6101-6108, in 1994.  The FTC adopted the original Telemarketing Sales Rule in 1995, extensively amended it in 2003, and amended certain provisions thereafter.

82.     The ICE Defendants are sellers or telemarketers engaged in "telemarketing" as defined by the TSR, 16 C.F.R. § 310.2(aa), (cc), and (dd).

83.     The TSR prohibits any seller or telemarketer from making a false or misleading statement to induce any person to pay for goods or services or to induce a charitable contribution.  16 C.F.R. § 310.3(a)(4).

84.     The TSR's prohibition against making false or misleading statements applies to all statements regarding upsells, whether the statements were made during an outbound call initiated by the telemarketer or an inbound call initiated by a consumer.  16 C.F.R. § 310.6(4).

85.     Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c) and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT III – THE ICE DEFENDANTS**
**Deceptive Telemarketing Calls in Violation of the TSR**
**(By Both Plaintiffs)**

86.     In numerous instances, in the course of telemarketing their goods and services, the ICE Defendants have made false or misleading statements, directly or by implication, to induce consumers to pay for goods or services, including, but not limited to, misrepresentations that they have identified problems on consumers' computers that will affect the performance or security of consumers' computers.

87.     The ICE Defendants' acts or practices, as described in Paragraph 86 above, are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.3(a)(4); 16 C.F.R. § 310.6(4).

## VIOLATIONS OF THE FLORIDA DECEPTIVE AND
## UNFAIR TRADE PRACTICES ACT

88.     Section 501.204 of FDUTPA, Chapter 501, Part II, Florida Statutes, prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."

### COUNT IV – ICE DEFENDANTS
### Florida Deceptive and Unfair Trade Practices Act Violation
### (By Plaintiff State of Florida)

89.     As set forth in Paragraphs 1 through 72 above, which allegations are incorporated as if set forth herein, in numerous instances, in the course of marketing, offering for sale, and selling computer security or technical support services, the ICE Defendants represent or have represented, expressly or by implication, through a variety of means, including through telephone calls and Internet communications, that they have identified problems on consumers' computers, including viruses, spyware, system errors and/or damage, that affect the performance or security of consumers' computers.

90.     In truth and in fact, in numerous instances in which the ICE Defendants have made the representations set forth in Paragraph 89, many problems that the ICE Defendants have identified do not affect the performance or security of consumers' computers.

91.     The ICE Defendants' representations as set forth in Paragraph 89 of this Complaint are false and misleading and likely to mislead consumers acting reasonably, and/or consumers within the State of Florida were actually misled by the ICE Defendants' misrepresentations in violation of Section 501.204 of FDUTPA.

### COUNT V – THE PC CLEANER DEFENDANTS
### Florida Deceptive and Unfair Trade Practices Act Violation
### (By Plaintiff State of Florida)

92.     As set forth in Paragraphs 1 through 72 above, which allegations are incorporated as if set forth herein, in numerous instances, in the course of marketing, offering for sale, and

selling computer security software or services, the PC Cleaner Defendants represent or have represented, expressly or by implication, through a variety of means, including through Internet advertisements and software-generated reports, that they have identified problems on consumers' computers, including malware, system problems and/or privacy concerns, that affect the performance or security of consumers' computers.

93.     In truth and in fact, in numerous instances in which the PC Cleaner Defendants have made the representations set forth in Paragraph 92, many problems that the PC Cleaner Defendants have identified do not affect the performance or security of consumers' computers.

94.     The PC Cleaner Defendants' representations as set forth in Paragraph 92 of this Complaint are false and misleading and likely to mislead consumers acting reasonably, and/or consumers within the State of Florida were actually misled by the PC Cleaner Defendants' misrepresentations in violation of Section 501.204 of FDUTPA.

## CONSUMER INJURY

95.     Consumers have suffered and will continue to suffer substantial injury as a result of the Defendants' violations of the FTC Act, the TSR and the FDUTPA.  In addition, the Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, the Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

96.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts,

restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

97.     Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from the Defendants' violations of the TSR, including the rescission or reformation of contracts, and the refund of money.

98.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction to allow Plaintiff State of Florida to enforce its state law claims against Defendants in this Court for violations of the FDUTPA.  Florida Statutes Sections 501.207, 501.2075, and 501.2077 authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violation of the FDUTPA, including injunctive relief, rescission or reformation of contract, the refund of monies paid, and the disgorgement of ill-gotten monies.

## PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, the TSR, and the Court's own equitable powers, and Plaintiff State of Florida, pursuant to Florida Statutes Sections 501.207, 501.2075, and 501.2077 and as authorized by the Court's own equitable powers, request that the Court:

A.     Award Plaintiffs such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to temporary and preliminary injunctions, and an order providing for immediate access, the turnover of business records, an asset freeze, the appointment of a receiver, and the disruption of domain and telephone services;

B.      Enter a permanent injunction to prevent future violations of the FTC Act, the TSR and FDUTPA by the Defendants;

C.      Award such relief as the Court finds necessary to redress injury to consumers resulting from the Defendants' violations of the FTC Act, the TSR and FDUTPA, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

D.      Award Plaintiff FTC the costs of bringing this action, and Plaintiff State of Florida its attorneys' fees and costs in bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.


Dated:  January 20, 2015                    Respectfully submitted,

                                            JONATHAN E. NUECHTERLEIN
                                            General Counsel


                                            /s/ Colleen B. Robbins _____
                                            Colleen B. Robbins, Special Bar  No. A5500793
                                            Emily Cope Burton, Special Bar No. A
                                            Federal Trade Commission
                                            600 Pennsylvania Ave. NW
                                            Washington, DC 20580
                                            (202) 326-2548; crobbins@ftc.gov
                                            (202) 326-2728; eburton@ftc.gov

                                            Attorneys for Plaintiff
                                            FEDERAL TRADE COMMISSION


                                            PAMELA JO BONDI
                                            ATTORNEY GENERAL
                                            STATE OF FLORIDA


                                            /s/ Katherine A. Kiziah_____
                                            Katherine A. Kiziah

Assistant Attorney General
Florida Bar Number 0017585
1515 N. Flagler Drive
Suite 900
West Palm Beach, Florida 33401
katherine.kiziah@myfloridalegal.com
(561) 837-5007

Attorney for Plaintiff
STATE OF FLORIDA

## CERTIFICATE OF SERVICE

I, Katherine Kiziah, hereby certify that on January 20, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send a notice of electronic filing to counsel of record identified on the Service List below:

## SERVICE LIST

David L. Ferguson
Jonathan M. Streisfeld
Seth D. Haimovitch
KOPELOWITZ OSTROW P.A.
200 SW 1st Ave., 12th Floor
Fort Lauderdale, FL 33301
Main: (954) 525-4100
Facsimile: (954) 525-4300
ferguson@kolawyers.com
striesfeld@kolawyers.com

Robert N. Nicholson
NICHOLSON & EASTIN, LLP
707 NE Third Ave.
Suite 301
Fort Lauderdale, FL 33304
Phone: 954-634-4400
Robert@NicholsonEastin.com

William H. Edmonson
Doll Amir Eley LLP
1888 Century Park East, Suite 1850
Los Angeles, CA 90067
Phone 310.557.9100
Facsimile 310.557.9101
wedmonson@dollamir.com

Colleen B. Robbins, Special Bar # A5500793
Emily Cope Burton, Special Bar # A5502042
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2548; crobbins@ftc.gov
(202) 326-2728; eburton@ftc.gov